Bissell, P. J.,
delivered the opinion of the court.
This proceeding was started by an application for a writ of certiorari to be directed to the county court of Arapahoe county. It appeared from the petition that John Vandevier had been appointed administrator of the estate of Harvey Rarick, and was engaged in winding up the estate. In the course of this administration, a controversy had arisen between the administrator and Martha Fetta, a creditor, concerning the allowance and payment of her claim. According to the allegations of the petition, the creditor had taken steps in respect to the enforcement of a judgment, and her proceedings resulted in an order by the county court, made after a hearing, that Vandevier bring into court a certain sum of money alleged to be in his hands. There was no judgment in the county court in any way concerning this matter, and what the petitioner sought to restrain or reverse by this proceeding was this order that he pay the money into court, contending that the court was without jurisdiction to make any such order. The alternative writ was issued aná served, and an answer was fded to which a demurrer was interposed. On the final hearing the writ was dismissed. From this judgment, which practically determined that Vandevier was without right to prosecute the proceeding, error is brought. So far as need be considered, the answer of the county judge practically set up that the administrator had been guilty of gross mismanagement, and particular acts of maladministra *427 tion were set up at length. As an illustration, it was set out that the representative had colluded with sundry parties, paid claims which were not legitimate charges on the estate, and paid money without any order or allowance by the county court in the ordinary course of his administration.
The question principally discussed by counsel, and on the determination of which this decision will be rested, concerns the power of the county court as a com-t of probate, under circumstances like these, to order a representative, who is wasting the assets of his testator or intestate to turn over the funds in his hands until his affairs can be investigated, or until such time as he may be removed and his successor appointed. Some question was made as to the necessity of a showing that the right of appeal or other review was not possible under the statute, but this will be left wholly unconsidered. There is a broad distinction between the rights of a representative of a decedent under the statute regulating the administration of estates, and those which he possessed under the general law as it existed prior to this enactment. It was undoubtedly true at the common law that the executor or the administrator had the right to dispose of the personal assets which came into his possession according to his judgment of the rights of the parties, subject only to such proceedings for an accounting as might be proper in case it was asserted that he had not proceeded according to law. While this rule prevailed, and during the time that administrations were controlled by the ecclesiastical courts, courts of equity took jurisdiction whenever a bill was filed by one showing an interest in an estate, providing there were abundant and sufficient allegations to show that the complainants had rights and interests which were being jeopardized by conduct which was illegal and likely to be destructive to the rights of the litigant. Por this reason the early English reports, and those containing the decisions of the chancery courts of this country in its early days, are full of cases in which the power and the duty of a court of equity to make an order that the funds be paid into court, whenever there was an admission of as *428 sets by the representative, are fully recognized and adjudicated. Williams on Executors (6 Am. ed.), vol. 3, 2043-2047; Daniell’s Chancery Practice (4 Am. ed.), chap. 40, vol. 2, 1771; McKim v. Thompson, 1 Bland’s Chancery, 150; Clarkson v. De Peyster, Hopkins Chancery Reports, 572.
That this power belongs to the courts of our state which have the right to exercise chancery jurisdiction in cases which may be brought to them, and that it is not taken away by the statute regulating administrations, ought to be very clear. County courts of this state are by the terms of -the constitution and the statute given concurrent jurisdiction with the district court in all cases of which they may legitimately take cognizance, and the right and power to regulate and control the settlement of the estates of deceased persons is expressly conferred upon them by statute. Under these circumstances, it may well be held that those courts possess the power, which they may exercise under proper circumstances, to order the representative to bring funds into court and abide any further order respecting the settlement of the estate. It is evident that the district court, if it could properly take cognizance of the administration of an estate, being a court with full chancery jurisdiction, has the right, according to the ancient practice and the well settled law, to make all. those orders which in former times were made as a matter of course by courts having equity jurisdiction. The fact that ordinarily courts of equity assumed the right to make these orders, and made them so that it might not be possible for the ecclesiastical tribunal, with which they somewhat conflicted, to remove the fund beyond the control of an ultimate decree, does not destroy the further reason, which would be to-day operative, that the real purpose of the order and the object to be accomplished was the preservation of the fund and the estate for the benefit of him or those who might show themselves entitled to it. The latter reason is of as much force in modern times as it was under the ancient practice. And it would undoubtedly be held that the district court had full power and authority to make such an order on a proper show *429 ing and under proper circumstances. Since the county court with respect to matters within its jurisdiction has authority concurrent and coextensive with the district court, there inheres in it as a necessary sequence the same power to make an order of this description.
Aside from this consideration, it must be adjudged that the power is necessarily incidental to the exercise of the very full control which the statute gives it to wind up the estates of deceased persons. According to it, the administrator is without personal authority by virtue of his appointment to pay debts, distribute assets or in anywise enforce or determine the form, manner-, or extent of payments or distributive shares, or in general to control and fix the proper disposition of the funds which may come into his possession. These matters are bound to be presented to the court for allowance, settlement and adjudication, and until an order be made in the premises, except in a few minor cases designated by the statute, he is without power to disburse any part of what may come into his possession as a representative. The court is charged with the duty, speaking in a definitive rather than an exact way, of marshaling the assets, determining the classes into which the debts shall be arranged, the order in which they shall be paid, the amount of the dividends properly applicable to each class, and in general with the supervision of the representative’s proceedings. This being true, it must be a power incidental to the execution of this jurisdiction to order funds to be brought into court and held for further action, in order that in a proper case the estate may be conserved, and the rights of interested parties conserved and protected. It might often happen that, if the persons concerned were compelled to await the result of an application for the removal of a representative and a hearing on an issue properly made, and a suit upon a- bond which might to the knowledge of the court at the very time be absolutely worthless, they would practically be remediless, and the estate would be lost and dissipated, awaiting a final determination of the proceedings which they had instituted. To avoid these *430 possible difficulties and dangers, and in discharge of the plenary powers which the statute confers, upon the court over estates, it must be held that this court, like all others having full jurisdiction over the subject-matter, has the right and authority to preserve the corpus of an estate for the purposes of final distribution and settlement.
These considerations justified the court in rendering judgment against the petitioner on his application for the writ, and it will accordingly be affirmed.

Affirmed.